**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANTHONY BRAGDON, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 05-0488 (JR) |
| MICHAEL MALONE, *et al.*, | : |
| Defendants. | : |

**MEMORANDUM ORDER**

Plaintiff Anthony Bragdon sues FBI agent Michael Malone and ten other unnamed FBI agents for violations of his constitutional rights under Bivens v. Six Unknown Agents, 403 U.S. 388 (1971). The complaint alleges a conspiracy to convict him using false evidence in deprivation of his rights under the Fourth, Fifth, Sixth, and Eighth Amendments. Because Malone is absolutely immune from suit based on his trial testimony in Bragdon's case, his motion to dismiss will be **granted** in part. The other part of Malone's motion, which seeks the protection of absolute immunity for his investigative work, must be **denied**.

**Background**

Bragdon was arrested in 1991 and charged with the rape of Coranda Farmer. On March 10, 1992 a jury found him guilty of assault with intent to rape while armed and possession of a firearm during a crime of violence. He was sentenced to 30 years in prison, 15 years for each of the two counts of conviction.

At Bragdon's trial, the prosecution introduced evidence from an FBI fiber analysis performed under Malone's supervision. Malone compared fibers scraped from the victim's panties and pants with samples collected from plaintiff's apartment, where the rape allegedly occurred. His examination included microscopic observation and color-testing using a microspectrophotometer. He did not perform a cross-sectional analysis, nor did he do other forms of destructive testing that are against FBI policy.

Malone found that four beige nylon trilobal fibers found on the victim's clothing matched a sample from defendant's carpet. He also found red and beige nylon trilobal fibers that did not match the defendant's carpet. On October 29, 1991, Malone issued an official report of his findings. The report discussed the matching beige and non-matching red fibers. It did not mention the presence of the non-matching beige fibers on the victim's clothing. According to the amended complaint, the allegations of which are taken are true for purposes of this motion, evidence of the non-matching fibers was withheld from the prosecution and defense teams.[1] This report apparently ended Malone's involvement in the investigation. He later testified at plaintiff's trial.

---

[1] According to Malone, however, his notes, along with the report and the scrapings, were in fact given to plaintiff's defense team on October 29, 1991. Decl. of Michael Malone at 10.

In April 1997, the Office of the Inspector General (OIG), United States Department of Justice, issued a special report titled, "The FBI Laboratory: An Investigation into Laboratory Practices and Alleged Misconduct in Explosives-Related and Other Cases" (OIG Report). The OIG Report identified Malone as an individual who had falsified work. Plaintiff's case was not mentioned in the report, but Steve Robertson, an independent scientist, later investigated and reported on Malone's work in plaintiff's case.

The independent investigation faulted the Malone's final report and trial testimony for several instances of overstatement or error. Malone testified that the matching beige trilobal fibers could only have come from Bragdon's carpet or "another carpet sample with exactly the same microscopic characteristics...if that source even existed." Tr. at 247. Robertson's report, however, noted that a variety of materials besides carpet contain trilobal fibers, and that, since "a carpet is mass-produced, to state that other carpet with the same characteristics as the suspect's carpet may not exist is erroneous and implausible." The report also found that Malone's analysis did not include the correct type of examination necessary to truly match the fibers: Malone had not performed the cross-sectional observations or dye-testing that are needed to establish a true match of fibers.

In March 2002, based on these findings and Malone's failure to mention evidence of non-matching beige trilobal fibers in his final report or trial testimony, plaintiff filed a petition to vacate his conviction.  On March 14, 2003, the Superior Court of the District of Columbia overturned plaintiff's conviction based on what it termed Malone's false testimony and failure to disclose potential exculpatory evidence.  Plaintiff then filed this <u>Bivens</u> action, which Malone moves to dismiss for failure to state a claim upon which relief can be granted.  Malone also asserts a defense of absolute immunity and moves, in the alternative, for summary judgment.

## **Analysis**

### **Failure to state a claim**

Malone's first argument, that the complaint does not give him fair notice of the nature and basis of plaintiff's claims, is rejected.  Nothing more is required than "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), quoting Fed. R. Civ. P. 8(a)(2).  The "notice pleading" standard relies on liberal discovery rules and summary judgment motions to define disputed facts and to dispose of unmeritorious claims.  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511-12 (2002).

The complaint alleges that Malone withheld exculpatory evidence from plaintiff and his prosecutors, supplied the prosecution with false forensic evidence, and provided false testimony at his trial, Am. Compl. ¶ 12-13, ¶ 15-16, and it alleges that this false evidence and testimony related to Malone's "testing, findings, and conclusions concerning the hair and fiber evidence found and presented in the case." That more than suffices for the "short and plain statement" required by Rule 8(a). Moreover, since the complaint refers to the findings of the Superior Court in its ruling overturning plaintiff's conviction, that court's lengthy discussion of the problems with Malone's investigation gives the defendants ample notice of the basis of plaintiff's claims.

**Absolute Immunity**

Malone next argues that any claims based on his trial testimony is barred by the absolute immunity afforded witnesses in judicial proceedings, and that "prosecutorial immunity" shields him from liability for claims based on his failure to disclose exculpatory evidence. Malone is correct in his assertion that he is absolutely immune from civil prosecution for his trial testimony. The absolute immunity that protects judges and prosecutors in the performance of their functions during the judicial phase of a case also cloaks witnesses testifying during

trial.  Briscoe v. LaHue, 460 U.S. 325, 329-31 (1983)[2].  This immunity applies to police and other governmental witnesses no less than private ones.  Id.  The majority of circuits have extended this immunity as a matter of logic even to claims of pre-trial conspiracies to commit perjury.[3]  The complaint in this case is not confined to Malone's testimony, however.  It also alleges that Malone withheld exculpatory evidence and fabricated evidence during his investigation.  Police officers and other officials are not entitled to absolute immunity for their investigatory actions.  See Buckley v. Fitzsimmons, 509 U.S. 259, 274 (1993).

Malone claims prosecutorial immunity, however, attempting to invoke the rule giving prosecutors absolute immunity for actions "intimately associated with the judicial

---

[2]  Although Briscoe addressed the application of absolute immunity to suits under 42 U.S.C. § 1983, the analysis is the same for Bivens actions.  Butz v. Economu, 438 U.S. 418, 504 (1978).

[3]  Eight out of nine circuits addressing the issue have reached this conclusion. See Mowbray v. Cameron County, Tex., 274 F.3d 269, 277 (5th Cir. 2001); Franklin v. Terr, 201 F.3d 1098, 1101-03 (9th Cir. 2000); Jones v. Cannon, 174 F.3d 1271, 1288-89 (11th Cir. 1999); Watterson v. Page, 987 F.2d 1, 9 (1st Cir. 1993); Snelling v. Westhoff, 972 F.2d 199, 200 (8th Cir. 1992); House v. Belford, 956 F.2d 711, 720-21 (7th Cir. 1992); Miller v. Glanz, 948 F.2d 1562, 1569 (10th Cir. 1991); Alioto v. City of Shively, 835 F.2d 1173, 1174 (6th Cir. 1987).  The Second Circuit is the lone exception.  See San Filippo v. U.S. Trust Co., 737 F.2d 246, 254-55 (2d Cir. 1984).

phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1974). This rule uses a functional approach and looks to the nature of the action, rather than the status of the actor. Id. Prosecutorial immunity thus protects actions that are advocatory in nature, but not actions that "cast [the prosecutor] in the role of an administrator or investigative officer." Id. at 430-31.

One of the functions protected by prosecutorial immunity is the failure to turn over Brady material to the defense team, id.; see also Moore v. Valder, 35 F.3d 189, 194-95 (D.C. Cir. 1995), and Malone argues by analogy that he should enjoy that protection for the function he performed, which was (allegedly) withholding exculpatory evidence. The argument stretches prosecutorial immunity to its breaking point, however. Prosecutorial immunity for pretrial actions is limited to "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Buckley, 509 U.S. at 274. In this case Malone's report was issued after the decision to indict, see Dkt. # 27, Ex. 1, but the date is not so important as the function. Note the Buckley Court's stress upon the difference between "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's

role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested, on the other hand." Id.  Malone's function was clearly on the detective's side of the line.  Accord Malley v. Briggs, 475 U.S. 335 (1986) (rejecting police officer's analogy to prosecutorial immunity).

To be sure, the Supreme Court has at various times noted the incongruity that would result if prosecutors were protected for behavior for which police officers faced liability. See Kalina v. Fletcher, 522 U.S. 118, 126 (1997) ("[I]t is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other.); Buckley, 509 U.S. at 276 ("When the functions of prosecutors and detectives are the same, as they were here, the immunity that protects them is also the same.");  Burns v. Reed, 500 U.S. 478, 495 (1991)("Indeed, it is incongruous to allow prosecutors to be absolutely immune from liability for giving advice to the police, but to allow police officers only qualified immunity for following the advice....").  Each of those statements, however, was in a decision limiting the absolute immunity of prosecutors, not expanding prosecutorial immunity to other actors.  See Kalina, 522 U.S. 118 (prosecutor not absolutely immune for participation in probable cause hearing); Buckley, 509 U.S. 259 (prosecutor not absolutely immune for pre-indictment fabrication

of evidence or false statements at press conference); Burns, 500 U.S. at 495 (prosecutor not absolutely immune for giving legal advice to the police).

The case on which Malone relies most heavily, Jean v. Collins, 221 F.3d 656 (4th Cir. 2000) (en banc) (per curiam) (Jean II), does not support his position.  Jean II involved a Section 1983 claim against two police officers for withholding-- from both the prosecution and the defense--the fact that had been hypnotized to aid recollection.  The case reached the Fourth Circuit for the first time in 1998.  See Jean v. Collins, 155 F.3d 701 (4th Cir. 1998) (en banc) (Jean I).  Judge Wilkinson, writing for the majority, wrote that the police officers enjoyed qualified immunity for their failure to disclose the evidence to the prosecutors, and absolute prosecutorial immunity for their failure to turn the evidence over to the defense.  Id. at 708.  Deciding what to turn over to the defense, the court reasoned, was a prosecutorial and not an investigative function.  Judge Wilkinson wrote:

> To the extent, therefore, that Jean contends that Collins and Shingleton failed to disclose exculpatory evidence directly to the defense, the police officers are entitled to the same absolute immunity that would be available to prosecutors for execution of the identical function.  Jean's claim casts the officers in a role much different from their traditional investigatory one.  Police officers normally assemble available evidence for the prosecution rather than evaluate it for trial purposes.  Prosecutors assess the material and exculpatory nature of that evidence in determining whether disclosure to the defense is

> required. By asserting that the police have a duty to make such sensitive legal determinations, Jean raises a claim against the officers not in their investigatory role, but instead in an advocate's role "intimately associated with the judicial phase of the criminal process." Imbler, 424 U.S. at 430.  Under the Court's approach, the officers must be accorded absolute immunity.

Id. at 706.

The majority's reasoning in Jean I would have supported Malone's contention, but the Supreme Court vacated the Fourth Circuit's judgment of Jean I and remanded the case for reconsideration in light of its opinion in Wilson v. Layne, 526 U.S. 602 (1999), a qualified immunity case.  See 526 U.S. 1142. Upon remand, in Jean II, an equally divided Fourth Circuit affirmed the judgment of Jean I without a majority opinion.

The opinion on which Malone relies is thus not an opinion of the court; it is Judge Wilkinson's concurrence.  And Judge Wilkinson's concurrence in Jean II is silent on the absolute immunity issue.  Indeed, it employs reasoning that is inconsistent with extending prosecutorial immunity for police withholding of exculpatory evidence.  Rather than extend immunity as the majority had in Jean I, Judge Wilkinson's concurrence in Jean II concludes that the plaintiffs made no cognizable claim of a constitutional violation--that Brady imposes a disclosure duty on prosecutors, but not upon police officers:

> Their job of gathering evidence is quite different from the prosecution's task of evaluating it.  This is especially true because the prosecutor can view the

>     evidence from the perspective of the case as a whole
>     while police officers, who are often involved in only
>     one portion of the case, may lack necessary context.

Id. at 660.  The determination that no constitutional duty was breached by the officers, and thus that there was no occasion to invoke immunity of any kind, highlights the difference between the prosecutorial Brady function, for which prosecutorial immunity is appropriate, and the investigative task of gathering evidence, for which it is not.

There was no evidence of bad faith on the part of the police in Jean, and Judge Wilkinson's concurrence followed the Supreme Court's ruling: "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." Arizona v. Youngblood, 488 U.S. 51, 58 (1988).  He observed, however, that "[o]f course the bad faith manipulation of evidence on the part of the police cannot be countenanced. Constitutional absolution for the concealment, doctoring, or destruction of evidence would fail to protect the innocent, fail to assist the apprehension of the guilty, and fail to safeguard the judicial process...." 221 F.3d at 663.  That observation contains no reservation for an absolute immunity defense for investigators, notwithstanding that prosecutorial decisions to withhold or manipulate evidence during a trial are accorded prosecutorial immunity, even if taken in bad faith.  In short,

Jean II provides no cover for the actions Malone is alleged to have undertaken.

The Court of Appeals for this circuit has deemed "the collection of information to be used in prosecution," including "whether the government has acquired all incriminating evidence," to be "investigative techniques." Moore, 35 F.3d at 194-95 (emphasis in original). It has explicitly distinguished between "acquiring evidence which might be used in a prosecution," which is not protected, and the "organization, evaluation, and marshalling of such evidence" by the prosecutor, which is protected. Id., citing Barbera v. Smith, 836 F.2d 96, 100 (2d Cir. 1987) (emphasis in original). Jean I notwithstanding, Malone's alleged deliberate withholding of certain findings of his fiber analysis is much more akin to "a misuse of investigative techniques legitimately directed toward" acquiring evidence, than it is to an exercise a prosecutor's duty to organize, evaluate, and marshal it during trial. Id. (emphasis in original). Accordingly, on the allegations of the amended complaint, Malone is not entitled to the benefit of prosecutorial immunity for these actions.[4]

---

[4] Malone asserts qualified immunity for his actions in a footnote. The assertion can be dealt with in a footnote. The defense of qualified immunity protects "government officials...from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Where,

**Conclusion**

Plaintiff's case appears to have severe factual problems, notably the lack of evidence of bad faith on Malone's part, and the indication in Malone's affidavit that he did turn over all evidence in this case to the defense team and the appropriate DCMPD authorities.  See Decl. of Michael Malone at 10; Def. Mot. to Dismiss at 24 n.13.  The implications of these weaknesses can be resolved under the rubric of Rule 56 after the parties have had a chance to engage in discovery.  Malone's motion to dismiss [24] is **granted in part** (as to his trial testimony) and otherwise **denied**.  All other pending motions are **denied as moot**.


                                    JAMES ROBERTSON
                              United States District Judge

---

as here, the claim is one of intentional wrongdoing, the defense is not appropriate.  See Malley v. Briggs, 475 U.S. 335, 341 (1986) (qualified immunity "provides ample support to all but the plainly incompetent or those who knowingly violate the law."